IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT JAMES JACKSON,<br>ANDRE CIMONE GOLSTON, and<br>ANTWAINE TREMAINE NELSON,<br><br>Defendants. | Case No. 21-CR-334-JFH |

## OPINION AND ORDER

Before the Court are motions for severance ("Motions") filed by Defendants Antwaine Tremaine Nelson ("Nelson") and Andre Cimone Golston ("Golston"). Dkt. No. 110; Dkt. No. 111. Nelson and Golston seek severance of their trials from that of Defendant Robert James Jackson ("Jackson"). *Id.* The United States of America ("Government") opposes the Motions. Dkt. No. 134. For the reasons stated, the Motions are DENIED.

## BACKGROUND

Jackson, Golston, and Nelson (collectively, "Defendants") were charged by indictment in October 2021. Dkt. No. 2. All three Defendants are charged with drug conspiracy related to alleged distribution and possession with intent to distribute fifty (50) grams or more of actual methamphetamine. *Id.* at 1-2. The indictment alleges Defendants maintained locations and residences in McCurtain County, Oklahoma, for storage and distribution of methamphetamine; used electronic communications equipment to further the conspiracy; and, while working independently when they desired, "knowingly and intentionally agreed and acted together jointly with other conspirators to advance the common overall goal of buying, selling[,] and otherwise possessing with intent to distribute and distributing methamphetamine." *Id.* at 2. It lists eighteen

(18) overt acts of the conspiracy: seventeen (17) involving Jackson, four (4) involving Nelson, and two (2) involving Golston. *Id.* at 3-5.[1] Regarding Nelson and Golston, the indictment alleges:

> On or about January 23, 2021, Nelson agreed to sell methamphetamine to Jackson.
>
> On or about January 23, 2021, Nelson and Jackson discussed purchasing methamphetamine from a source of supply and distributing the methamphetamine.
>
> On or about January 28, 2021, Nelson possessed with the intent to distribute more than five (5) grams of actual methamphetamine.
>
> On or about February 1, 2021, Nelson and Jackson discussed purchasing methamphetamine from a source of supply, distributing the methamphetamine, and how much to charge for the methamphetamine.
>
> On or about January 28, 2021, Golston agreed to sell Jackson a quantity of methamphetamine.
>
> On or about February 13, 2021, Golston sold more than fifty (50) grams of actual methamphetamine to Jackson.

*Id.* In addition to the drug conspiracy count brought against all Defendants, the indictment also alleges ten (10) counts of distribution of methamphetamine against Jackson; one (1) count of possession with intent to distribute methamphetamine against Nelson; and one (1) count of distribution of methamphetamine against Golston. *Id.* at 5-8.

In April 2022, Jackson filed a motion to declare the case complex. Dkt. No. 81; Dkt. No. 84. Discovery in the case is voluminous, spanning more than 3,600 files including over 1,000 recorded calls and videos. Dkt. No. 84 at 1. Following several discovery-related continuances, the Court struck all deadlines until discovery could be completed. Dkt. No. 101. At a status conference on August 4, 2022, the parties represented that the case was ready to be set for trial

---

[1] Since Defendants are charged with conspiring together, some of the overt acts alleged involve two of them.

again. The Court shortly thereafter entered a new scheduling order, establishing a motions deadline of September 12, 2022 and a jury trial date of October 31, 2022. Dkt. No. 123.

Nelson and Golston have both repeatedly asserted their innocence of the crimes charged against them, first in writing [*see, e.g.,* Dkt. No. 80 (ex parte); Dkt. No. 91] and later orally at the status conference on August 4, 2022. Nelson seeks severance from Jackson based on the theory that—if trials are severed—Jackson will waive his Fifth Amendment privilege, corroborate Nelson's defense, and testify on Nelson's behalf. Dkt. No. 110. Nelson says that, while being transported to court together, Jackson "urged [him] to tell both the Court and his counsel that Mr. Jackson is willing to testify that Mr. Nelson had nothing to do with any alleged conduct of Mr. Jackson." *Id.* Golston makes no independent representations about whether Jackson would testify on his behalf. Dkt. No. 111. However, both Nelson and Golston submitted letters allegedly written by Jackson, which state that Nelson and Golston were not involved in Jackson's drug trade:

> Wassup Mr. Nelson im just checking on you Im pretty sure they gone let you go you didn't have nothing to do with none of this sound like they just putting stuff on you so just keep yo head up yo gone be alright.
>
> Robert Jackson

Dkt. No. 110-1.

> Wassup Mr. Nelson how everything gone have you heard from yo lawyer if so what they say cause this some bullshit I aint never sold no dope with you and Andre it just seem like they just tryna throw some shit on us but Love you bro
>
> Robert J

Dkt. No. 110-2; Dkt. No. 111-2.

> Wassup Andre this Robert how you been holding up im okay this way im still lost for words on how they saying we did drugs exchanges I never did any type of buisness [sic] with you all I have known for you to do is work them cows its like they just throwing

3

>stuff on us that's weird to me the man above will make show the truth come out though we gone be okay
>
>Robert Jackson

Dkt. No. 111-1.

Nelson and Golston also assert that the vast majority of evidence in the case is against Jackson, not them. Nelson claims "[t]hrough pages and pages of discovery, there is no evidence to be found that [he] sold drugs to anyone" because most "discovery in this case revolves around Mr. Jackson's alleged [drug trafficking organization] and has minimal to do with Mr. Nelson." Dkt. No. 110 at 2. Golston asserts that "the overwhelming volume of evidence in the case results from controlled buys from, as well as[] surveillance and wiretapping of, the defendant [] Jackson." Dkt. No. 111 at 1-2. Golston also asserts that the alleged conspiracy "was ongoing for ten (10) months *before* any mention of [him]" and that the indictment's list of overt acts includes "nine (9) separate acts of distribution by [] Jackson which have **_NO_** *alleged factual connections* to [him]." *Id.* at 2 (emphasis in original).

## AUTHORITY AND ANALYSIS

The Federal Rules of Criminal Procedure allow an indictment to "charge [two (2)] or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). "As a general rule, persons indicted together are tried jointly." *United States v. Martinez*, 76 F.3d 1145, 1152 (10th Cir. 1996). Joint trials of defendants who are indicted together are preferable because '[t]hey promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *United States v. Hall*, 473 F.3d 1295, 1301-02 (10th Cir. 2007) (quoting *Zafiro v. United States*, 506 U.S. 534, 537 (1993)). However, Federal Rule of Criminal Procedure 14 allows "relief from prejudicial joinder" and states, "If the joinder of offenses or defendants in

an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).

Severance is a matter of discretion, not of right. *United States v. McConnell*, 749 F.2d 1441, 1444 (10th Cir. 1984). "In deciding on a motion for severance, the district court has a duty to weigh the prejudice resulting from a single trial of counts against the expense and inconvenience of separate trials." *United States v. Janus Indus.*, 48 F.3d 1548, 1557 (10th Cir. 1995). "[B]ecause severance is a matter of discretion, a defendant bears the heavy burden of showing real prejudice." *United States v. Wardell*, 591 F.3d 1279, 1299 (10th Cir. 2009) (internal quotations omitted). Phrased differently, "[a] defendant must show actual or threatened deprivation of his right to a fair trial." *Martinez*, 76 F.3d at 1152. In a conspiracy case, a movant must overcome a rebuttable presumption that co-conspirators should be tried together. *Wardell*, 591 F.3d at 1299.

**A. Need for Co-Defendant's Statements**

Nelson argues severance is necessary so that he may call Jackson as a witness, submitting two letters from Jackson saying Nelson did not sell drugs for Jackson and stating in his Motion that Jackson agreed through counsel "to testify that Mr. Nelson had nothing to do with any alleged criminal conduct attributable to Mr. Jackson." Dkt. No. 110 at 2-3; Dkt. No. 110-1; Dkt. No. 110-2. Golston does not state that Jackson has agreed to testify on his behalf. *See generally* Dkt. No. 111. The Court therefore does not consider this basis for severance as to Golston.

The Tenth Circuit uses seven factors to assess a motion for severance premised on a claim that the movant needs to present a co-defendant's testimony. *McConnell*, 749 F.2d at 1145.

> 1. The likelihood that the co-defendant would in fact testify at the movant's severed trial and waive his Fifth Amendment privilege;
>
> 2. The significance of the testimony in relation to the defendant's theory of defense;

> 3. The exculpatory nature and effect of such testimony;
>
> 4. The likelihood that the co-defendant's testimony would be impeached;
>
> 5. The extent of prejudice caused by the absence of the testimony;
>
> 6. The effect of a severance on judicial administration and economy; and
>
> 7. The timeliness of the motion.

*Id.* These factors do not compel severance.

The first factor weighs against severance, as there is an absence of an affidavit from the supposed testifying co-defendant "validating [the movant's] assertions—that is, indicating their intention to invoke their Fifth Amendment privilege in a joint trial, stating that they would testify in a severed trial, and identifying the exculpatory content of their testimony." *Wardell*, 591 F.3d at 1300 (citing *United States v. Pursley*, 577 F.3d 1204, 1215-16 (10th Cir. 2009)); *see also McConnell*, 749 F.2d at 1444 (sufficient showing for first factor where testifying co-defendant submitted affidavit). Here, Nelson states Jackson's counsel has said that Jackson would testify on Nelson's behalf. Dkt. No. 110 at 2. However, there is nothing in the record from Jackson or his counsel—no affidavit or other sworn document from client, nor filing from counsel. While Nelson and his counsel give the Court no reason to doubt their representation, the Court cannot rely solely on their offering of others' out-of-court statements.

The second and third factors weigh toward severance. Jackson's testimony that Nelson "had nothing to do" with Jackson's alleged drug trafficking organization would directly support Nelson's theory that he did not participate in a drug conspiracy with Jackson. And since Jackson was the alleged leader of the drug trafficking organization, his testimony would be exculpatory.

The fourth factor weighs against severance, as the co-defendant in question has prior convictions which could be used for impeachment were he to testify. *McConnell*, 749 F.2d at

1446. Here, Jackson appears to have prior convictions which the Government would likely introduce if Jackson took the stand in a severed trial for Nelson. *See* Wagoner County Case No. CF-2013-306 (larceny of an automobile and petit larceny); McCurtain County Case No. CF-2012-335 (trafficking in illegal drugs after felony conviction; unlawful possession of controlled drug with intent to distribute; possession of firearm while on supervision by Department of Corrections); McCurtain County Case No. CF-2011-308 (possession of controlled substance; possession of alcohol by a person under 21; transporting open container; failure to stop at stop sign).[2] A "strong probability" of impeachment—as is present here—negatively affects the value of a co-defendant's potential testimony. *McConnell*, 749 F.2d at 1446.

The fifth factor is neutral. Jackson's testimony, as discussed, could be exculpatory. But the likelihood of impeachment reduces the risk that Nelson would be prejudiced by the absence of Jackson's testimony.

The sixth factor strongly weighs against severance. The Court has experienced unprecedented caseloads and jurisdictional complexities in the past two years. *See Oklahoma v. Castro-Huerta*, 142 S.Ct. 2486, 2492 (2022) (describing the "significant challenge for the Federal Government and for the people of Oklahoma" in the wake of *McGirt v. Oklahoma*, 140 S.Ct. 2452 (2020)); *United States v. Budder*, --- F. Supp. 3d ---, 2022 WL 1948762, at *7 (E.D. Okla. Apr. 29, 2022) (collecting cases where federal courts "noted *McGirt's* tremendous impact"). In particular, *McGirt* led to a one-year increase of more than 400% in the number of criminal cases filed in the Eastern District of Oklahoma. *See* U.S. Courts, *Judiciary Supplements Judgeship*

---

[2] The Court takes judicial notice of Jackson's Oklahoma state court felony case dockets. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) ("Although we are not obliged to do so, we may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand.").

*Request, Prioritizes Courthouse Projects* (Sept. 28, 2021), https://www.uscourts.gov/news/2021/09/28/judiciary-supplements-judgeship-request-prioritizes-courthouse-projects. The Eastern District of Oklahoma has one and a half district judges, of which the undersigned is the half-time judge due to his multi-district caseload. Amid this unprecedented strain on judicial resources, the Court grants severances in only the most compelling circumstances. *See United States v. Barker*, No. 21-CR-175-JFH, Dkt. No. 65 at 5 (E.D. Okla. Mar. 23, 2022) (noting the Court's strong disfavor of severances given its post-*McGirt* caseload but granting motion to sever where constitutional issue was inescapable).

The seventh factor weighs toward severance. Nelson timely filed his motion before a motions deadline was even set. However, this factor does not outweigh the concern for efficiency and judicial resources reflected in the sixth factor. *See Zafiro*, 506 U.S. at 538 (explaining that joint trials play a vital role in the criminal system because they promote efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts"); *Hall* 473 F.3d at 1301 (same).

In sum, while three *McConnell* factors weigh toward severance and one is neutral, three other factors significantly weigh against severance. The likelihood that Jackson would indeed testify is uncertain; Jackson's testimony is vulnerable to impeachment because of his multiple prior convictions; and the Court strongly disfavors severances due to its significantly challenging post-*McGirt* circumstances. These considerations do not rebut the presumption that alleged co-conspirators Nelson and Jackson should be tried together.

### B. Risk of Spillover Evidence

Both Nelson and Golston also seek severance on the theory that the case's "overwhelming volume of evidence" centers on Jackson and "has minimal to do" with them. Dkt. No. 110 at 2; Dkt. No. 111 at 1-2.

The Supreme Court has recognized a risk of prejudice may occur in a joint trial and that that risk may be heightened when defendants have "markedly different degrees of culpability." *Wardell*, 591 F.3d at 1300 (citing *Zafiro*, 506 U.S. at 539). "Nonetheless, the nearly insuperable rule in this circuit is that 'a defendant cannot obtain severance simply by showing that the evidence against a co-defendant is more damaging than the evidence against herself.'" *Id.* (quoting *United States v. Dazey*, 403 F.3d 1147, 1165 (10th Cir. 2005)). This is particularly true in conspiracy cases: "a mere disparity in the evidence from a quantitative standpoint against each defendant in a conspiracy case, without more, provides no justification for severance." *United States v. Hack*, 782 F.2d 862, 871 (10th Cir. 1986). Only in "an extraordinary instance" will "prejudice [be] manifested from evidentiary and culpability disparities" between charged co-conspirators. *Wardell*, 591 F.3d at 1300. Even if there is a high risk of prejudice, "less drastic measures, such as limiting instructions, often will suffice to cure [it]." *Zafiro*, 506 U.S. at 539.

Nelson and Golston have not demonstrated an extraordinary instance giving rise to manifest prejudice. They are alleged to have conspired with Jackson to distribute and/or possess with intent to distribute methamphetamine. These charges stem from the same general nucleus of facts and the Government is likely to prove each charge against each Defendant through interrelated evidence. *See Wardell*, 591 F.3d at 1301. The evidentiary and culpability disparity is not so extreme as to justify severance. Both the Supreme Court and the Tenth Circuit "teach[] that juries may properly be relied on to differentiate among defendants and among charges." *United*

*States v. Emmons*, 24 F.3d 1210, 1219 (10th Cir. 1994). If requested, the Court will take steps to minimize spillover prejudice, such as instructing the jury "to give separate and individual consideration to each charge against each defendant." *Wardell*, 591 F.3d at 1301 (citing *Hack*, 782 F.2d at 871). Again, Nelson and Golston have not rebutted the presumption that alleged co-conspirators should be tried together.

## CONCLUSION

IT IS THEREFORE ORDERED that Nelson's opposed motion for severance [Dkt. No. 110] and Golston's motion to join, adopt, and supplement Nelson's opposed motion for severance [Dkt. No. 111] are DENIED.

DATED this 18th day of August 2022.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE